UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aaron Teegarden,

    Plaintiff,

v.

Tom Roy, Joan Fabian, Andy Lieffort,
Sara Hard, Doe Officers 1-7, Doe Doctors 1-4,
Doe Nurses 1-6.

    Defendants.

Civil No. 12-2190 (SRN/FLN)

**REPORT AND RECOMMENDATION**

_____

Terry Duggins for Plaintiff.
Jacob Campion, Assistant Attorney General, for Defendant.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' Motion to Dismiss (ECF No. 13). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

While incarcerated at the Minnesota Correctional facility in Stillwater (MCF-STW) in 2009, Teegarden was attacked by other inmates on three separate occasions within three months.[1] ECF No. 1 at 6. He alleges that he was denied proper medical treatment, including chemical dependency treatment, prior to the physical assaults. *Id.* at 11. Teegarden's complaint includes several federal claims related to alleged violations of his Eighth Amendment rights and multiple state-law

---

[1] Because this is a Report and Recommendation on a 12(b)(6) motion to dismiss, the Court assumes the facts alleged are true.

negligence claims. *Id.* at 13-16. Teegarden identifies four named and 17 unknown defendants, including: Tom Roy, the current Commissioner of Corrections; Joan Fabian, the former Commissioner of Corrections; Sara Hard, the Health Services Coordinator at MCF-STW; Andy Lieffort, Teegarden's case worker; Doe correctional officers 1-7; Doe Nurses 1-6; and Doe Doctors 1-4. The Does remain unidentified and are not formally represented in this matter. *Id.* at 3-5.

### A. Procedural history

Prior to the hearing on this motion, the parties stipulated to dismissal of several counts alleged in the original complaint. ECF No. 19. Teegarden voluntarily dismissed other counts in his memorandum of law opposing this motion. ECF No. 22. The only claims that remain against the four named Defendants—Roy, Fabian, Hard and Lieffort—include: (1) a section 1983 claim for failing to protect in violation of the Eighth Amendent (Count IV); and (2) state law negligence, negligent supervision and negligent hiring claims (Count V). All claims alleged against the Does remain.

### B. Three physical attacks against Teegarden

The first physical attack against Teegarden occurred on March 30, 2009. ECF No. 1 at 6. Inmate Patrick Lussier had an "aversion" toward Teegarden, placed him in a headlock and punched him in the face multiple times. Lussier is a member of a Native American gang operational at MCF-STW. *Id.* Approximately one month after this incident, Teegarden wrote a kite (an informal complaint) to his case manager, Defendant Lieffort. *Id.* at 6-7. The kite stated:

> I can't get in another fight. I was assaulted back in [segregation] and my back is in bad shape, spinal fusion, etc. There is someone in the back half that will throw down on me and is in the front half. Please tell me if you think I will be OK.

According to Teegarden, Lieffort told him that he was responsible for his own safety and that if he felt he was in danger, he should notify a staff member. *Id.* at 7. At some point Teegarden also

2

informed Jane Doe Officer 1 that he was concerned about his safety. Her response was that he had gotten himself into a "pickle." *Id.*

Approximately five weeks later, Teegarden was attacked for the second time. *Id.* at 7. This time he was assaulted by inmate Jason Dominguez, who is allegedly part of a white supremacist gang operating at MCF-STW. *Id.* One week after that, on June 16, 2009, Teegarden was attacked for a third time by other inmates with gang affiliations. *Id.* Inmates Dustin Brown and Christopher Lund "jumped" Teegarden in the dining hall. *Id.* Lund started the assault by punching Teegarden in the face. *Id.* After Teegarden fell to the floor, Brown kicked him in the face multiple times. *Id.* Brown was wearing steel-toed boots that were issued to him by the MCF-STW metal shop. *Id.* According to prison policy, officials are supposed to make sure that inmates remove their steel toed boots before leaving the metal shop. *Id.* at 8.

Teegarden was seriously injured as a result of the third assault. He was taken to the Emergency Room at St. Joseph's Hospital in St. Paul where he was treated for traumatic brain injury, damaged jaw plates, a broken tooth, a broken nose and damage to rods and surgery plates in his back. ECF No. 1 at 10. After treatment at the hospital, Teegarden was taken to the Minnesota Correctional Facility-Oak Park Heights (MCF-OPH) transitional medical care unit facility, where he remained until July 7, 2009. *Id.* In 2011, inmates Lund and Brown were convicted of felony assault for their attack against Teegarden and sentenced to an additional 15 months to run concurrent to their original sentences. *Id.* at 8.

### C. Teegarden's transport from Oak Park Heights to Stillwater

On July 7 Teegarden was transported from MCF-OPH back to MCF-STW. *Id.* at 9. Just before he was transported, his arms went numb and he felt lightheaded. *Id.* When Teegarden stood

3

up to ask for help, he fainted and hit his head on the ground. *Id*. When he regained consciousness, six officers hovered over him and told him to "get up." *Id*. Teegarden told them that he could not get up and that he needed a nurse. *Id*. Nevertheless, the officers forced him into a wheelchair. *Id*. Teegarden expressed feeling faint in the wheelchair, but one of the officers told him that he did not care and that he was only there to get him back to the prison. *Id*. Once the wheelchair was near the van, the officer told Teegarden to "get into the fucking vehicle." *Id*. The officers did not put Teegarden's seatbelt on him and they repeatedly told him he would have to wait until they arrived at MCF-STW to get medical treatment. *Id*.

### D. Previous medical conditions.

Teegarden also alleges that he was denied other medical treatment prior to the assaults, which left him in a "vulnerable position." *Id.* at 11. He alleges that he was "disparaged for being a 'whiner' and 'nurse shopping' to feed his addiction." *Id.* He also alleges that he was denied chemical dependency treatment despite "suspicions" that he was still under "control" of his addiction. *Id.*

## II. LEGAL STANDARD

To determine the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from the facts plead. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may

4

not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A pleading must contain enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.*, (citing Fed. R. Civ. P. 8(a)(2)).

### III. LEGAL ANALYSIS

#### A.  Teegarden's Eighth Amendment claims.

Defendants argue that Teegarden failed to allege sufficient facts in his complaint to establish an Eighth Amendment claim against them. The Court agrees, except as to the claim against Lieffort. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the cruel and unusual punishment clause of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 829 (1994). Prison officials must take "reasonable measures to guarantee the safety of inmates [and] . . . protect prisoners from violence at the hands of other prisoners." *Id.*

In order to prove a failure-to-protect claim under the Eighth Amendment, inmates must show that (1) the deprivation of their rights was sufficiently serious, and (2) the prison official had a sufficiently culpable state of mind (i.e. they knew of the risk and failed to reasonably respond). *Id.*, (citing *Wilson v. Seiter*, 501 U.S., 294, 298 (1991) and *Rhodes v. Champman*, 452 U.S. 337, 347 (1981)). An inmate's deprivation of rights is "sufficiently serious" when an official's failure to

5

protect results in the inmate being incarcerated under conditions posing a "substantial risk of serious harm." *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010). In light of the serious injuries suffered by Teegarden, the Court concludes that his deprivation of rights was sufficiently serious. *Schoelch v. Mitchell*, 625 F.3d 1041, 1047 (8th Cir. 2010) (holding that evidence of an objectively serious injury establishes the first prong of a failure-to-protect claim). The following analysis, therefore, focuses on the second criterion only, which asks whether the Defendants knew that Teegarden faced a risk of being attacked by other inmates and failed to take reasonable actions to prevent the attacks.

### 1. Teegarden failed to plead sufficient facts against Roy, Fabian and Hard.

Teegarden has not plead sufficient facts to establish the plausibility that Roy, Fabian or Hard[2] were deliberately indifferent to a substantial risk of harm that he faced. Teegarden does not allege that they were aware of the attacks against him. Roy, Fabian and Hard all serve (or previously served) in supervisory roles at MCF-STW. This, however, is insufficient to establish a section 1983 claim. *Kulow v. Nix,* 28 F.3d 855, 858 (8th Cir. 1994) (holding that *respondeat superior* does not apply to section 1983 claims).Therefore, the Eighth Amendment claim against them must be dismissed. *See* ECF No. 1.

### 2. Teegarden pled sufficient facts against Lieffort.

Defendants argue that Teegarden also failed to state a claim against Lieffort because he did not name specific future attackers whom he feared in the kite he sent after the first attack. The Court

---

[2] The Court recommends dismissing the claims against Hard without prejudice; if Teegarden has additional facts to plead in regard to Hard's alleged deliberate indifference toward his medical needs upon his return to MCF-STW from MCF-OPH, he should allege such facts in an amended complaint.

6

disagrees. The Supreme Court has held that a prison official will not escape liability just because he could not verify a particular risk, so long as he strongly suspected the risk to exist. *Farmer* at 843; *Davis v. Scott*, 94 F.3d 444, 446 (8th Cir. 1996). Teegarden's kite, which expressed concern about his safety, is enough to establish the plausibility that Lieffert knew about the risk Teegarden faced, yet failed to take reasonable actions to ensure his safety. Even if the kite alone was insufficient to establish the second prong, the second attack establishes the plausibility that Lieffort knew of a substantial risk faced by Teegarden and did nothing to address it prior to the third attack. Teegarden properly pled an Eighth Amendment claim against Lieffort.

**B.     Teegarden's negligence claims.**

Having found that Teegarden has properly pled at least one federal claim, the Court will exercise its supplemental jurisdiction over Teegarden's state law negligence claims. *See* 28 U.S.C. § 1367.  The Court construes Teegarden's complaint to allege a prima facie negligence claim, as well as negligent supervision and hiring claims, against all Defendants. A prima-facie negligence claim requires showing that (1) a duty was owed; (2) the duty was breached; (3) the breach was the proximate cause of damages; and (4) actual damages. *Foss v. Kincade*, 766 N.W. 2.d 317, 320 (Minn. 2009). An individual has a duty to protect others when there is (1) a special relationship between the parties and (2) a foreseeable risk of harm. *Bjerke v. Johnson*, 742 N.W. 2d 660. 665 (Minn. 2007). The relationship between prison officials and inmates is considered a special relationship. *Conney v. Hooks*, 535 N.W. 2d 609, 611 (Minn. 1995). However, in order to prove negligent supervision and hiring claims, one must show that the employer knew or should have known that the employee might engage in injurious conduct. *Johnson v. Peterson*, 734 N.W. 2.d 275, 278 (Minn. Ct. App. 2007).

### 1. Teegarden failed to plead specific facts against Roy, Fabian and Hard.

Defendants argue that Teegarden failed to state sufficient facts to support his alleged negligence claims against Roy, Fabian and Hard. The Court agrees. Teegarden argues that it is only necessary to show that Roy, Fabian and Hard failed to implement policies designed to prevent attacks like those suffered by Teegarden. However, no facts about current prison policies are included in the complaint; nor are any facts about Roy, Fabian or Hard's knowledge of the attacks. The Court concludes that the negligence claims against Roy, Fabian and Hard must be dismissed.

### 2. Teegarden pled sufficient facts against Lieffort.

Defendants also argue that insufficient facts are pled against Lieffort to establish his alleged negligence claims. The Court disagrees. The Court concludes that Teegarden properly pled a prima-facie state negligence claim against Lieffort; however, insufficient facts are pled to establish a negligent supervision or hiring claim against Lieffort. A prima-facie negligence claim is properly pled against Lieffort because a special relationship exists between Leiffort and Teegarden; Lieffort may have breached his duty to Teegarden by not taking action after receiving the kite (or at least by not taking additional action after the second attack); Lieffort's inaction contributed to an environment where Teegarden was attacked a third time and suffered serious injuries. Therefore, the Court concludes that Teegarden has adequately pled a negligence claim against Lieffort.

### C. Teegarden's claims against Doe Defendants.

The Court will not address the question of whether any of the claims against the unidentified defendants must be dismissed, but the Parties should identify the Doe Defendants as soon as possible. Teegarden should submit an amended complaint against the Does within 60 days of issuance of this Report and Recommendation.

## IV. CONCLUSION

For the reasons articulated above, the Court concludes that: (1) all claims against Roy, Fabian must be dismissed with prejudice; (2) all claims against Hard must be dismissed without prejudice; (3) the Eighth Amendment failure-to-protect and the prima-facie negligence claim against Lieffort should proceed. Teegarden should submit an amended complaint against the Does no later than 60 days after issuance of this Report and Recommendation. If Teegarden has any additional facts he seeks to allege against Hard for her behavior upon his return to MCF-STW from MCF-OPH, they should be included in the amended complaint.

## V. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion to dismiss (ECF No. 13) be **GRANTED in part** and **DENIED in part**.

1. To the extent Defendants' motion seeks to dismiss the Eighth Amendment claims (Count IV) against Roy, Fabian and Hard, the motion be **GRANTED**, as follows:

    A. Count IV against Roy and Fabian be dismissed **with prejudice**.

    B. Count IV against Hard be dismissed **without prejudice.**

2. To the extent Defendants' motion seeks to dismiss the Eighth Amendment claims (Count IV) against Lieffort, the motion be **DENIED**.

3. To the extent Defendants' motion seeks to dismiss the negligence claims (Count V) against Roy, Fabian and Hard, the motion be **GRANTED**, as follows:

    A. Count V against Roy and Fabian be dismissed **with prejudice**.

    B. Count V against Hard be dismissed **without prejudice.**

4. To the extent Defendants' motion seeks to dismiss the negligence claims (Count V) against Lieffort, the motion be **GRANTED in part** and **DENIED in part**, as follows:

A. The negligent supervision and hiring claims pled against Lieffort be dismissed **with prejudice**.

B. The prima-facie state law negligence claim pled against Lieffort remains.

5. To the extent Defendants' motion seeks to dismiss Count I, the motion be **GRANTED**, pursuant to Plaintiff's voluntary dismissal. *See* ECF No. 22, 1.

6. To the extent Defendants' motion seeks to dismiss the official capacity claims asserted against Roy, Fabian, Hard and Lieffort in Counts II , III and V, the motion be **GRANTED**, pursuant to Plaintiff's stipulation. *See* ECF No. 22, 1.

7. To the extent Defendants' motion seeks to dismiss all remaining claims against Doe Defendants, the motion be **DENIED**. Teegarden shall submit an amended complaint no later than 60 days from the issuance of this Report and Recommendation. The amended complaint shall identify the Doe defendants, if possible, and include all factual allegations against them.

DATED: March 15, 2013                              *s/ Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 29, 2013**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 29, 2013,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.